MURDOCK, Justice
(dissenting).
In Darby v. Johnson, 477 So.2d 322, 325 (Ala.1985), this Court observed the following time-honored principles of equity:
‘““It is a most important principle, thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud, or in the consummation of a fraudulent scheme.” 2 Pomeroy, Eq. Jur. (3d Ed.) § 921, p. 1658.’
“Deming [v. Lee ], 174 Ala. [410,] 414, 56 So. [921,] 922 [ (1911) ]. Furthermore, ‘[e]quity will not permit a party to retain property, obtained on the faith of a verbal contract, to consummate a fraud by retaining the property and refusing to perform the contract.’ ... (Citations omitted.) 174 Ala. at 419, 56 So. at 924.”
(Emphasis omitted; emphasis added.)
I am concerned that there are indeed nuances and or distinctions that we have *220 overlooked in some recent decisions, including the decision today, regarding the availability of relief when one has been the subject of a fraud committed by means of a promise to which the Statute of Frauds is applicable.[1] Are we not enabling fraudulent actors to commit fraud so long as they use certain types of oral promises? Are we not writing out of our law the time-honored maxims quoted above?
Clearly, one cannot enforce the contractual promise itself that is made in contravention of the Statute of Frauds. But if that promise is made fraudulently so as to induce another to give for it something of value, why should the promisee not at least be able to retrieve from the dishonest promisor that which has been given in exchange for the promise, or its equivalent? Such an outcome would only put the parties back in their original positions. It would do no violence to the policy underlying the Statute of Frauds, which, as it relates to land, is to guard against a party’s being forced to convey his or her land to another if he or she has not in fact promised to do so.
In this case, if the Uphams can prove that the Wicks defrauded them by making false representations regarding the ownership of land, or false promises to convey it, and thereby induced the Uphams to enter into and consummate a separate agreement to buy the Wicks’ home, why shouldn’t the Uphams at least be able to rescind the home-sale transaction and thereby retrieve that which they gave in reliance upon, or in return for, the fraudulent representations or promises?

. In DeFriece v. McCorquodale, 998 So.2d 465 (Ala.2008), for example, it appears that the promise to reconvey the land in question was part of an illegal, sham arrangement to avoid taxes and therefore should not have been actionable in any event.